## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

LOYOLA UNIVERSITY MEDICAL CENTER
2160 S. 1st Ave.
Maywood, IL 60153

                    Plaintiff,

      vs.

ALEX M. AZAR II
Secretary of the United States Department of
Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 20201

                 Defendant.

Case No. 1:18-cv-178

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND SUMS DUE UNDER THE MEDICARE ACT

## INTRODUCTION

1.     This is a civil action brought to obtain judicial review of an agency decision regarding Medicare reimbursements rendered by Alex M. Azar II (the "Secretary" or "Defendant"), in his official capacity as the Secretary of the United States Department of Health and Human Services ("DHHS"). Plaintiff seeks reversal of the Secretary's decision. A reversal would require the Secretary's Provider Reimbursement Review Board (the "Board") to take jurisdiction over Plaintiff's appeal of its Medicare payments for direct graduate medical education ("DGME") and indirect medical education ("IME") during Plaintiff's fiscal year ending June 30, 2005 ("FY 2005").

2.      Plaintiff, Loyola University Medical Center ("Loyola"), is an acute-care hospital that participates in the Medicare program.  Loyola operates approved medical training programs for physician interns, residents, and fellows (collectively "residents").  Loyola receives Medicare DGME and IME payments.  The DGME and IME payments are calculated, in part, based on the number of full-time equivalent residents ("FTEs") that train at Loyola.  The number of FTEs that a hospital may count in any given year is generally capped at the number that it trained in its 1996 fiscal year.  This cap can be increased under certain circumstances for new medical residency training programs.

3.      A Medicare Administrative Contractor ("MAC") reopened Loyola's FY 2005 Medicare cost report to add FTEs for several new medical residency training programs and issued a Revised Notice of Program Reimbursement ("RNPR").  The MAC did not, however, update all lines of the cost report that were necessary to increase DGME and IME payments for the new medical residency training programs.  The MAC did not update the prior-year DGME and IME FTE counts to include the new medical residency training programs.  The MAC also did not update the IME current-year resident-to-bed ratio to include FTEs from the new medical residency training programs.

4.      Loyola appealed the FY 2005 RNPR to the Board, challenging the MAC's determination of Loyola's DGME, IME, and IME capital payments.  Loyola's FY 2005 Board appeal argued that the MAC erred by failing to update the prior-year DGME and IME FTE counts and the current-year IME resident-to-bed ratio.

5.      The Board, acting on behalf of the Secretary, held that it did not have jurisdiction over Loyola's claims because the MAC did not adjust certain specific lines of the cost report

relating to the prior-year DGME and IME FTE counts, the current-year IME resident-to-bed ratio, and the IME capital payment.

6.    The Secretary's decision violates the Medicare statute and regulations in effect during the relevant time period, and the Secretary's decision is arbitrary, capricious, an abuse of discretion, not based upon substantial evidence, and otherwise contrary to law.  Accordingly, Loyola asks this Court to reverse the Secretary's decision and reinstate Loyola's FY 2005 Board appeal.

## JURISDICTION AND VENUE

7.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (2012) (the "Medicare Act"), which establishes the Medicare program, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2017) (the "APA").

8.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers "the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received."  The Board's final decision is dated November 29, 2017, and this action is, therefore, timely filed within the 60-day limitations period established at 42 U.S.C. § 1395oo(f)(1).

9.    Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

10.    Plaintiff, Loyola University Medical Center, is an academic medical center located in Maywood, Illinois.  Loyola participates in the Medicare program as a provider of

services.  Loyola operates graduate medical education programs for residents and receives

Medicare DGME and IME payments.

11.     Defendant is the Secretary of the Department of Health and Human Services and

is the federal officer responsible for administering the Medicare program pursuant to the Social

Security Act.  Defendant is sued in his official capacity.

## BACKGROUND

### I.     The Medicare Program and Payment for Hospital Services

12.     Medicare is a public health insurance program that furnishes health benefits to

participating individuals once they reach the age of 65.  The Secretary has delegated much of the

responsibility for administering the Medicare program to the Centers for Medicare and Medicaid

Services ("CMS"), which is a component of DHHS.

13.     Under the Medicare Act, an eligible Medicare beneficiary is entitled to have

payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital

services provided by a hospital participating in the Medicare program as a provider of health care

services.  Inpatient hospital services are paid under Part A of the Medicare Act.  Medicare Part B

is a supplemental insurance program that pays for physician services, outpatient services, and

certain other services, such as physical and occupational therapy.  This action concerns Medicare

Part A.

14.     Medicare Part A pays for inpatient hospital services using a prospective payment

system.  Under this system, hospitals are reimbursed for inpatient services based on

prospectively-determined amounts assigned to specific diagnosis-related groups ("DRGs").  42

U.S.C. § 1395ww(d).  Each hospital inpatient is assigned a DRG at discharge, which determines

the amount that the hospital is paid for that inpatient stay.

## II.     Medicare Cost Report Audits and Appeals

15.     At the close of a hospital's fiscal year, it is required to submit to its designated MAC a "cost report" showing both the costs incurred by the provider during the fiscal year and the appropriate share of these costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f) (2017). During FY 2005, DGME payments were calculated on Worksheet E-3, Part IV of the hospital cost report. During FY 2005, IME payments were calculated on Worksheet E, Part A of the hospital cost report.

16.     The MAC must analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). *Id.* § 405.1803(a). A provider's DGME and IME payments are among the components of the final payment determination reported in the NPR.

17.     A MAC may "reopen" a cost report within three years from the date of the NPR. *Id.* § 405.1885(a), (b). If the MAC revises the reopened cost report, it issues an RNPR.

18.     A hospital may appeal a final determination of its Medicare reimbursement to the Board pursuant to 42 U.S.C. § 1395oo(a). The Board has jurisdiction over appeals from MAC determinations if the following requirements are met: (1) the hospital is dissatisfied with the final determination; (2) the amount in controversy is at least $10,000; and (3) the hospital requests a hearing within 180 days of receiving the final determination. *Id*.

19.     A hospital may appeal an RNPR to the Board. 42 C.F.R. § 405.1889. In 2011, the Secretary issued a regulation limiting an appeal of an RNPR to "[o]nly those matters that are specifically revised in a revised determination or decision." *Id.* § 405.1889(b)(1).

20.     The Administrator of CMS, acting on behalf of the Secretary, may, but is not required to, review a Board decision.  42 U.S.C. § 1395oo(f).  The CMS Administrator may reverse, affirm, or modify the decision.  *Id*.

21.     A hospital has the right to obtain judicial review of any final decision of the Board, or any reversal, affirmance, or modification of the Board's decision by the CMS Administrator, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or CMS Administrator is received.  *Id.*

**III.     Indirect Medical Education**

22.     Congress has established payments to compensate hospitals for both DGME and IME.  The statute sets forth the IME payment calculation as follows:

$c \times [(1 + r)^{n-1}]$ = "indirect teaching adjustment factor" where—

$c$ = a statutorily set adjustment factor;

$r$ = ratio of FTEs to hospital beds; and

$n$ = .405 (measurement factor for teaching activity).

*Id.* § 1395ww(d)(5)(B)(ii).  The resulting "indirect teaching adjustment factor" is then multiplied by the hospital's DRG payments for the cost reporting year to arrive at the IME reimbursement amount.  *Id*. § 1395ww(d)(5)(B)(i).  The IME component of this case concerns the variable "r," known as the resident-to-bed ratio.

23.     The variable "r" is determined using data from the current cost reporting period, the two prior cost reporting periods, and the 1996 cost reporting period.  Each hospital's FTEs are capped at the number the hospital trained in its most recent cost reporting period ending on or before December 31, 1996.  *Id.* § 1395ww(d)(5)(B)(v).  In any given year, the number of FTEs is calculated by averaging the lower of the actual or capped FTE count in the current cost reporting

period and the preceding two cost reporting periods.  *Id*. § 1395ww(d)(5)(B)(vi)(II).  This capped and averaged FTE count is divided by the number of hospital beds in that hospital to arrive at the hospital's current-year resident-to-bed ratio.

24.    Finally, the current-year resident-to-bed ratio is compared to the resident-to-bed ratio in the prior year, and the smaller of the two ratios is used as the variable "r" to calculate the current-year IME payments.  *Id*. § 1395ww(d)(5)(B)(vi)(I).

25.    In addition, the Secretary makes a separate payment to hospitals for the capital-related costs of inpatient hospital services.  *Id.* § 1395ww(g).  The Secretary makes a specific payment for IME capital costs.  42 C.F.R. § 412.322.  The IME capital payment is calculated, in part, based on the three-year average of IME FTEs.  *Id.*

## IV.    Direct Graduate Medical Education

26.    The Medicare statute also reimburses hospitals for the direct costs of graduate medical education.  42 U.S.C. § 1395ww(h).  The DGME payment is calculated by multiplying a hospital's "approved amount" times the percentage of inpatient bed days attributable to patients insured by Medicare Part A.  *Id.* § 1395ww(h)(3)(A), (C).  The "approved amount" is a product of a hospital's "approved FTE resident amount" (which is not at issue here) and the weighted average number of FTEs.  *Id.* § 1395ww(h)(3)(B); 42 C.F.R. § 413.76.  The DGME portion of this case concerns the weighted average number of FTEs.

27.    The weighted average number of FTEs is calculated using "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods."  42 U.S.C. § 1395ww(h)(4)(G)(i).  For cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of DGME FTEs that a hospital may count, based on each hospital's number of FTEs during the most recent fiscal year that ended on

or before December 31, 1996.  *Id.* § 1395ww(h)(4)(F).  Thus, similar to IME, a hospital's DGME

payment is dependent upon the FTE count in its current cost reporting period, the FTE counts in

its previous two cost reporting periods, and the FTE count in its 1996 cost reporting period.

**V.      New Medical Residency Training Programs**

28.      Congress required the Secretary to issue rules adjusting the DGME and IME FTE

caps for "medical residency training programs established on or after January 1, 1995."  *Id.* §

1395ww(d)(5)(B)(viii), (h)(4)(H)(i).

29.      The Secretary defines "a new medical residency training program" as "a medical

residency that receives initial accreditation by the appropriate accrediting body or begins training

residents on or after January 1, 1995."  42 C.F.R. § 413.79(*l*).  The Accreditation Council for

Graduate Medical Education ("ACGME") is among the Secretary's approved accrediting bodies.

*Id.* §§ 413.75(b), 415.152.

30.      The Secretary issued a DGME regulation stating, "[i]f a hospital had allopathic or

osteopathic residents in its most recent cost reporting period ending on or before December 31,

1996, the hospital's unweighted FTE cap may be adjusted for new medical residency training

program(s) established on or after January 1, 1995, and on or before August 5, 1997."  *Id.* §

413.79(e)(2).  An IME regulation incorporates the DGME requirements for adjustments to the

cap for new medical residency training programs.  *Id*. § 412.105(f)(1)(vii).

<strong>FACTS SPECIFIC TO THIS CASE</strong>

31.      Loyola trained residents in its fiscal year ending June 30, 1996 ("FY 1996").

Accordingly, the MAC established DGME and IME FTE caps based on Loyola's FY 1996

resident FTE counts.

32.     Loyola established four medical residency training programs during the period between January 1, 1995 and before August 5, 1997—Anesthesiology: Pain Management; Clinical Cardiac Electrophysiology; Hematology/Oncology; and Clinical Neurophysiology (hereinafter collectively referred to as the "Four New Residency Programs").  Time that residents spent training in these programs was not included in the 1996 FTE counts that were used to establish the DGME and IME FTE caps.

33.     ACGME accredited Loyola's Anesthesiology: Pain Management residency program effective May 25, 1995.

34.     ACGME accredited Loyola's Clinical Cardiac Electrophysiology residency program effective July 1, 1995.

35.     ACGME accredited Loyola's Hematology/Medical Oncology residency program effective July 1, 1996.

36.     ACGME accredited Loyola's Clinical Neurophysiology residency program effective July 1, 1996.

37.     On September 6, 2007, the MAC issued an NPR for Loyola's FY 2005.

38.     For purposes of determining Loyola's FY 2005 prior-year DGME and IME FTE counts, the prior year was Loyola's fiscal year ending June 30, 2004 ("FY 2004").  The MAC reopened Loyola's FY 2004 cost report, and by letter dated October 27, 2011, the MAC issued an RNPR adding 6.17 FTEs from the Four New Residency Programs as new program increases to Loyola's DGME and IME FTE caps.  Thus, the October 27, 2011 RNPR added 6.17 FTEs to the number of FTEs that were used to calculate Loyola's FY 2004 DGME payments.  The October 27, 2011 RNPR also added 6.17 FTEs to the number of FTEs that were used to calculate Loyola's FY 2004 IME payments.

39.     By letter dated August 18, 2010, Loyola requested that the MAC reopen the FY 2005 cost report "to revise the Medicare IME and DGME and Capital payments.  The FTEs from qualified new programs were not added on to the Hospital's 1996 cap."

40.     The MAC reopened the FY 2005 cost report by letter dated October 4, 2010 "for the following reasons:  To review FTEs from new programs to be added to the 1996 FTE cap and correct the prior year intern and resident to bed ratio."

41.     By letter dated January 12, 2012, the MAC issued an RNPR adding 6.17 FTEs from the Four New Residency Programs to certain lines of Worksheet E-3, Part IV and Worksheet E, Part A.  The MAC did not, however, update the prior-year FTE counts on Worksheet E-3, Part IV or Worksheet E, Part A to reflect the 6.17 FTEs from the Four New Residency Programs that the MAC added to the FY 2004 cost report in the October 27, 2011 RNPR.  As a result, the FY 2004 DGME and IME FTEs reported on the FY 2005 cost report are lower than the DGME and IME FTEs reported on the FY 2004 cost report.

42.     The MAC's failure to correct the prior-year FTEs on the FY 2005 cost report lowered the three-year average DGME and IME FTE counts and the current-year resident-to-bed ratio.  These errors reduced Loyola's DGME and IME payments by $201,825.

43.     By letter dated July 5, 2012, Loyola appealed the January 12, 2012 RNPR to the Board.  Loyola's appeal sought to correct the prior-year DGME and IME FTEs and their corresponding impact on the current-year resident-to-bed ratio and the payments for DGME, IME, and IME capital.

44.     On November 29, 2017, the Board dismissed Loyola's FY 2005 appeal.  The Board contended that it did not have jurisdiction over the appeal because the MAC did not revise certain specific lines on the cost report applicable to the prior-year DGME FTEs, the prior-year

IME FTEs, and the current-year resident-to-bed ratio when it issued the January 12, 2012 RNPR.

The Board relied upon the 2011 regulation stating that "[o]nly those matters that are specifically

revised in a revised determination or decision" may be appealed to the Board.  42 C.F.R. §

405.1889(b)(1).  According to the Board, each line of the cost report corresponds to a "matter"

that must be specifically revised as a precondition of Board jurisdiction.

45.      The Board's November 29, 2017 decision constitutes the Secretary's final agency

action.

## COUNT I
## VIOLATIONS OF THE MEDICARE STATUTE GOVERNING BOARD APPEALS

46.      Plaintiff realleges and incorporates by reference paragraphs 1–45 as if fully set

forth below.

47.      The Medicare statute entitles a hospital to a hearing before the Board if the

hospital is dissatisfied with the MAC's final determination, the amount in controversy is at least

$10,000, and the hospital requests a hearing within 180 days of receiving the MAC's

determination.  42 U.S.C. § 1395oo(a).

48.      Plaintiff is entitled to a hearing to contest its FY 2005 DGME, IME, and IME

capital payments because Plaintiff was dissatisfied with the MAC's final determination, the

amount in controversy exceeded $10,000, and Plaintiff appealed the January 12, 2012 RNPR

within 180 days.  The Secretary's dismissal of Plaintiff's FY 2005 appeal violates provisions of

the Medicare Act governing Board proceedings.

## COUNT II
## VIOLATIONS OF THE SECRETARY'S REGULATIONS

49.      Plaintiff realleges and incorporates by reference paragraphs 1–45 as if fully set

forth below.

50.     The regulation governing an appeal of an RNPR entitles a hospital to appeal "any matter" that is altered in an RNPR.  42 C.F.R. § 405.1889(b).  The MAC's January 12, 2012 RNPR revised the "matter" of the new program cap FTEs.  Because the MAC did not correctly adjust the new program cap FTEs to include FTEs from FY 2004, Plaintiff was entitled to appeal the prior-year DGME FTEs, the prior-year IME FTEs, the current year resident-to-bed ratio, and the IME capital payment.  The Secretary violated the regulation at 42 C.F.R. § 405.1889 by improperly limiting Board jurisdiction solely to line items of the cost report revised by the MAC.

## COUNT III
## ARBITRARY AND CAPRICIOUS AGENCY ACTION

51.     Plaintiff realleges and incorporates by reference paragraphs 1–45 as if fully set forth below.

52.     The regulation governing an appeal of an RNPR entitles a hospital to appeal "any matter" that is revised in an RNPR.  *Id.* § 405.1889(b).  The Secretary's dismissal of Plaintiff's FY 2005 appeal improperly limited Board jurisdiction to particular lines of the cost report and was, therefore, arbitrary, capricious, an abuse of discretion, and otherwise contrary to law, in contravention of the APA.  5 U.S.C. § 706(2)(A).

## COUNT IV
## VIOLATION OF APA RULEMAKING PROCEDURES

53.     Plaintiff realleges and incorporates by reference paragraphs 1–45 as if fully set forth below.

54.     By limiting Board jurisdiction to specific lines of the cost report, the Secretary impermissibly changed the substantive requirements of the regulation at 42 C.F.R. § 405.1889(b) in violation of the notice and comment rulemaking procedures of the APA, 5 U.S.C. § 553.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests relief as follows:

1.      A declaration by the Court that the Board's decision is legally invalid and should be set aside as arbitrary, capricious, an abuse of discretion, not based upon substantial evidence, and not in accordance with the law.

2.      A declaration by the Court that the Board's failure to take jurisdiction over Plaintiff's FY 2005 appeal is arbitrary, capricious, an abuse of discretion, not based upon substantial evidence, and not in accordance with the law.

3.      An order from this Court requiring the Board to take jurisdiction over Plaintiff's FY 2005 appeal.

4.      An order from this Court requiring the Secretary to pay Plaintiff interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2).

5.      An order from this Court awarding Plaintiff the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,

/s/ Ronald S. Connelly
Ronald S. Connelly
D.C. Bar No. 488298
POWERS PYLES SUTTER & VERVILLE, PC
1501 M Street, N.W., 7th Floor
Washington, DC 20005
Tel. (202) 872-6762
Fax (202) 785-1756
Ron.Connelly@PowersLaw.com
Attorney for Plaintiff

Dated:  January 26, 2018